UNITED STATES OF AMERICA,

     Plaintiff,

v.                                           Civ. No. 18-143 GJF/SMV

ASSORTED DRUG PARAPHERNALIA
VALUED AT $29,627.07,

     Defendant, and

JASON FERNANDEZ,

     Fernandez.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the United States' "Motion for Summary Judgment" ("Motion") [ECF No. 29], filed August 8, 2018. The Motion is fully briefed. *See* ECF Nos. 32-33. After careful consideration of the pertinent law and the briefing, the Court will grant the Motion and will order forfeiture of all right, title, and interest in the Assorted Drug Paraphernalia ("Defendant Property") to the United States. For the reasons discussed below, the Court concludes that the admissible evidence submitted by Claimant Fernandez has failed to establish a genuine dispute of material fact that the Defendant Property was not drug paraphernalia subject to civil forfeiture. The Court further concludes that the undisputed material facts entitle the United States to judgment as a matter of law.

## I.    BACKGROUND

Claimant Jason Fernandez ("Fernandez") owned Phat Glass, Inc., a business located at 1211 East Idaho Avenue in Las Cruces. Pl.'s Mot. Ex. 108. On September 12, 2017, pursuant to a federal search warrant, federal agents seized a large number of items from Phat Glass, Inc., including: glass bongs, plastic bongs, glass pipes, plastic pipes, metal pipes, plastic grinders, wood

grinders, metal grinders, roach clips, chillums, flip tops, glass vials, concealment containers, nails and quartz bangers, scales, synthetic urine kits, and detoxifiers.[1]  *Id*. Exs. 32-104, 109. Collectively, these items constitute the Defendant Property.  On November 22, 2017, Fernandez timely filed a claim with the Drug Enforcement Administration asserting a lawful right to recover all Defendant Property.  *Id*. Ex. 109.

## II.    SUMMARY OF ARGUMENTS

In the instant Motion, the United States argues that the Defendant Property qualifies as drug paraphernalia as the term is defined in 21 U.S.C. § 863(d), thus extinguishing Fernandez's property rights and subjecting it to forfeiture under 21 U.S.C. § 881.  Pl.'s Mot. at 3-6.  More specifically, the United States contends that the bongs, pipes, roach clips, chillums, and miniature spoons (attached to the flip tops) are per se drug paraphernalia.  *Id*., *passim*.  The United States further asserts that: the flip top and glass vials taken together are primarily intended and designed for use with marijuana; the concealment containers are primarily intended and designed to conceal marijuana; the nails and quartz bangers are primarily intended and designed for use in smoking marijuana; the scales are primarily intended for use in processing and preparing controlled substances for sale; the grinders are primarily intended and designed for grinding marijuana, the synthetic urine kits are primarily intended to conceal the use of marijuana; and the detoxifiers are primarily intended to prevent positive results on drug tests.  *Id*.  Lastly, the United States contends that all of the Defendant Property falls outside the tobacco exemption to the definition of drug paraphernalia.  *Id*., *passim*.

---

[1] Flip tops are designed to hold a powdered drug in its vial, in which the lid can be twisted to reveal an opening that allows for the powder to be directly snorted from the vial.  Pl.'s Mot. Ex. 112 ¶ 34.  The flip top also allows for the cap to be removed and a miniature spoon attached to the cap is then used to snort the powder.  *Id.*  A chillum is a dry, handheld pipe that looks like a tube.  *Id*. ¶ 28.  They can be used to smoke marijuana, methamphetamine, or crack cocaine and are usually referred to as "one hitters."  *Id*.  Quartz bangers are a type of nail, or heating rod, in which a flame is applied to the quartz banger until it glows red, then the hot quartz banger is placed on marijuana to vaporize it instead of using an open flame.  *Id*. ¶ 17.  A quartz banger is also used to vaporize marijuana oil.  *Id.*

Fernandez responds that he falls within the class of persons to whom 21 U.S.C. § 863 expressly does not apply. Resp. Pl.'s Mot. 3. Relying on the exemption set forth in 21 U.S.C. § 863(f)(1), Fernandez asserts that he is exempt from the forfeiture statute because New Mexico authorizes him to use medical marijuana pursuant to the Lynn and Erin Compassionate Use Act, N.M. Stat. Ann. § 26-2B-2, *et. seq. Id.* at 3-4. Fernandez argues that he is further exempt because he maintains a business license issued by the City of Las Cruces and pays taxes. *Id.* at 5.

In reply, the United States emphasizes that 21 U.S.C. § 863(f)(1) exempts a person from criminal prosecution but is inapplicable to in rem civil forfeiture proceedings. Pl.'s Reply 6. The United States further posits that even if the exemption applied to in rem proceedings, the Lynn and Erin Compassionate Use Act does not allow Fernandez to sell or possess large quantities of drug paraphernalia. *Id.* at 9-12.

## III.     SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party who will bear the burden of proof at trial on a dispositive issue must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. In order for an issue to be genuine, the evidence of it must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If there is not sufficient evidence favoring the nonmoving party, there is no issue for trial. *Id.* at 249.

Furthermore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1986)) (internal quotation marks omitted).

At the summary judgment stage, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). As with any fact asserted by a party in a summary judgment motion, the non-movant must point the Court to such support by "citing to particular parts of materials in the record[.]" FED. R. CIV. P. 56(c)(1)(A). All material facts set forth in the motion and response that are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

Because the Court decides motions for summary judgment by viewing the facts in the light most favorable to the non-moving party, the Court obeys three general principles. First, the Court's role is not to weigh the evidence, but only to assess the threshold issue of whether a genuine issue exists as to material facts such that a trial is required. *See Liberty Lobby*, 477 U.S. at 249. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999). Third, the Court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257. Nonetheless, "[w]hen opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## IV.  LEGAL STANDARDS IN CIVIL FORFEITURE

### A.  Statutory Basis for Forfeiture

In a federal civil forfeiture action, the burden of proof is on the United States "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *United States v. Lot Number 1 of Lavaland Annex*, 256 F.3d 949, 956 (10th Cir. 2001). As relevant here, Congress has commanded that "[a]ny drug paraphernalia," "shall be subject to forfeiture to the United States and no property rights [] exist in them." 21 U.S.C. § 881(a).  The term "drug paraphernalia" is defined as follows:

> any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance . . ., [i]t includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body.

21 U.S.C. § 863(d).  The definition enumerates the following fifteen items as *per se* drug paraphernalia:

> (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured mental bowls; (2) water pipes; (3) carburetion tubes and devices; (4) smoking and carburetion masks; (5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand; (6) miniature spoons with level capacities of one-tenth cubic centimeter or less; (7) chamber pipes; (8) carburetor pipes; (9) electric pipes; (10) air-driven pipes; (11) chillums; (12) bongs; (13) ice pipes or chillers; (14) wired cigarette papers; or (15) cocaine freebase kits.

*Id.*; *see also Posters 'N' Things, LTD. v. United States*, 511 U.S. 513, 519 (1994) (identifying similar list in predecessor statute as "per se drug paraphernalia").[2]

In *Posters 'N' Things,* the Court noted that an unenumerated item that is "designed for use" with controlled substances or that is "primarily intended for use" with controlled substances meets the definition of drug paraphernalia. 511 U.S. at 518-19 (citing *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 501 (1982)). An item is "designed for use" with controlled substances if it "is principally used with illegal drugs by virtue of its objective features, i.e., features designed by the manufacturer." *Hoffman Estates*, 455 U.S. at 501. A product's "primarily intended use . . . refers to [its] likely use rather than to the [claimant's] state of mind." *Posters 'N' Things, LTD*, 511 U.S. at 519. Both standards require an objective analysis rather than a subjective scienter requirement. *Id.* at 521-22.

Furthermore, to assist courts in determining whether items that do not constitute per se drug paraphernalia nonetheless qualify as drug paraphernalia, § 863 provides eight objective factors to consider:

> (1) instructions, oral or written, provided with the item concerning its use; (2) descriptive materials accompanying the item which explain or depict its use; (3) national and local advertising concerning its use; (4) the manner in which the item is displayed for sale; (5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products; (6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise; (7) the existence and scope of legitimate uses of the item in the community; and (8) expert testimony concerning its use.

21 U.S.C. § 863(d). These factors "focus on the actual use of the item in the community." *Posters 'N' Things, LTD*, 511 U.S. at 520.

---

[2] Although the Supreme Court examined 21 U.S.C. § 857, now repealed, in its opinion interpreting the definition of drug paraphernalia, the content of § 857 is identical to 21 U.S.C. § 863. Consequently, the Supreme Court's interpretation of § 857 is controlling when analyzing § 863.

Section 863 includes a separate exemption from the definition of drug paraphernalia for those items "traditionally intended for use with tobacco products." 21 U.S.C. § 863(f)(2). Consistent with the above factors, an objective inquiry determines whether an item meets the tobacco exemption. *Posters 'N' Things, LTD*, 511 U.S. at 520-21.

## V. UNDISPUTED FACTS

The Court divides this section into two parts: (1) facts that the parties have expressly agreed are undisputed, and (2) facts submitted by the United States that the Court has found to be undisputed pursuant to D.N.M.LR-Civ. 56.1(b), despite Fernandez's assertions. The United States supports its argument that all of the Defendant Property constitutes drug paraphernalia with two declarations, an affidavit, and one hundred seven photographs of the items displayed for sale at Phat Glass, Inc. as well as the interior and decorations of the store. Fernandez's evidence consists solely of his own affidavit and the publication "Medical Cannabis Program Patient Statistics for New Mexico."

### A. Stipulated Undisputed Facts

Of the eleven material facts that the United States enumerated in its Motion [Pl.'s Mot. 7-8], Fernandez admitted eight of them in his Response. Resp. 2. The Court will therefore treat the following as undisputed material facts:[3]

1.     On September 8, 2017, United States Magistrate Judge Carmen E. Garza issued a search and seizure warrant, authorizing federal agents to search Phat Glass, Inc., located at 1211 East Idaho Avenue, Las Cruces, New Mexico, and to seize drug paraphernalia.

2.     On September 12, 2017, federal agents executed the search and seizure warrant at Phat Glass, Inc.

---

[3] The Court uses the paragraph numbering and lettering schemes used by the parties in their briefing.

3.      Government Exhibits 1-2 are true and accurate photographic depictions of the exterior of Phat Glass, Inc.

4.      Government Exhibits 3-31 are true and accurate photographic depictions of the interior of Phat Glass, Inc. as it appeared on September 12, 2017, prior to the seizure of drug paraphernalia.

5.      Government Exhibits 32-104 are true and accurate photographic depictions of all the items seized from Phat Glass, Inc. on September 12, 2017.

6(a).   The items seized from Phat Glass, Inc. on September 12, 2017, constitute the Defendant Property in this case.

6(b).   Jason Fernandez is the sole claimant of the Defendant Property.

8.      A sign listing "Shop Policies" that was displayed at Phat Glass, Inc. on September 12, 2017, stated: "You cannot talk about illegal stuff! If you do we will kick your ass out!" and "All products are for legal use!"

## B.      Facts the Court Finds to Be Undisputed

7.      Although Fernandez asserts that Material Fact 7 is in dispute, the evidence he has designated does not actually controvert this fact. Specifically, the evidence designated by Fernandez does not refute DEA Special Agent Carlos Martos's declaration that "[he] observed that drug paraphernalia were the primary merchandise displayed for sale at Phat Glass, Inc." nor does it contradict Officer Novicki's declaration that "[Phat Glass, Inc.] . . . is primarily engaged in the sale of drug paraphernalia and constitutes a head shop." Pl.'s Mot. Exs. 110, 112. Fernandez may disagree that drug paraphernalia "were the primary merchandise for sale," but he fails to create any dispute of fact with his legal conclusion characterizing Phat Glass, Inc. as a "gift and novelty shop [where] all items are lawfully offered for sale pursuant to New Mexico and local laws." Resp. 3; Ex. A.

9.     Although Fernandez asserts that Material Fact 9 is in dispute, the evidence he has designated does not actually controvert this fact.  To be sure, Fernandez's designated evidence states that Phat Glass, Inc. is a "gift and novelty shop [where] all items are lawfully offered for sale pursuant to New Mexico and local laws."  Resp. 3; Ex. A.  But this assertion does not address, much less contradict, the United States' evidence that certain items on display at the store "including decorations and merchandise contained depictions that are associated with marijuana and drug culture."  Pl.'s Mot. 8 ¶ 9.  Consequently, the Court will find Material Fact 9 to be undisputed.[4]

11.     Although Fernandez asserts that Material Fact 11 is in dispute, the evidence he has designated does not actually controvert this fact.  Fernandez's affidavit that "all products sold are for lawful purposes" comes nowhere close to addressing the United States' evidence that the Defendant Property is not objectively designed for or traditionally used with tobacco products. Consequently, the Court will find Material Fact 11 to be undisputed.

VI.    **ANALYSIS**

Applying the governing principles of law to the undisputed material facts of this case, the Court concludes that Fernandez's evidence is insufficient to establish that the Defendant Property falls outside the definition of drug paraphernalia or that the "authorized by law" exemption applies. The only evidence Fernandez has provided is his own affidavit and a publication by the New Mexico Department of Health that sets forth Medical Cannabis Program Patient Statistics.  In the end, the evidence Fernandez submitted falls well short of the quantum necessary for him to create a fact issue as to whether he lawfully maintains a property right in the Defendant Property.

---

[4] The Court does not address Material Fact 10 because it consists of legal conclusions instead of actual facts.  The parties' disagreement about legal conclusions does not create a "fact issue" that would foreclose summary judgment.

The Court's analysis will proceed in three steps. First, the Court considers whether the undisputed facts demonstrate that the Defendant Property meets the definition of drug paraphernalia under § 863. Next, the Court analyzes whether the "authorized by law" exemption in 21 U.S.C. § 863(f)(1) requires the return of the Defendant Property to Fernandez. Lastly, the Court examines whether the undisputed facts foreclose the applicability of the tobacco exemption under § 863(f)(2).

### A. Defendant Property Meets Definition of Drug Paraphernalia

The Defendant Property consist of eight categories of items, enumerated as follows:

1. Pipes and smoking instruments

2. Roach clips

3. Marijuana grinders

4. Scales

5. Nails and quartz bangers

6. Flip tops and glass vials

7. Concealment containers

8. Synthetic urine kits and detoxifiers

The undisputed facts show that each of the categories satisfies the definition of per se drug paraphernalia or objectively satisfies the criteria associated with the "designed for use" or "primarily intended for" standards.

#### 1. Some of Defendant Property Is Per Se Drug Paraphernalia

Several items in the Defendant Property constitute per se drug paraphernalia. The bongs, bong components, glass pipes, metal pipes, plastic pipes, water pipes, carburetor pipes, roach clips, and chillums depicted in Government Exhibits 32-104 match certain enumerated categories of

drug paraphernalia. Pl.'s Mot. Exs. 110, 112. Indeed, "the list of items in § [863(d)] constituting

per se drug paraphernalia provides . . . relatively clear guidelines as to prohibited conduct." *Posters*

*'N' Things*, 511 U.S. at 525. Furthermore, Fernandez's affidavit fails to create a triable issue that

the bongs, bong components, glass pipes, metal pipes, plastic pipes, water pipes, carburetor pipes,

roach clips, and chillums depicted in Government Exhibits 32-104 do not constitute per se drug

paraphernalia. Because per se drug paraphernalia is considered contraband, and because absent

an exception a person cannot maintain a lawful property right in contraband, Fernandez would

forfeit any property right in the bongs, bong components, glass pipes, metal pipes, plastic pipes,

water pipes, carburetor pipes, and chillums unless an exemption applies. As discussed below, the

material facts demonstrate that no exemption applies.

### 2. Rest of Defendant Property Is Primarily Intended and Designed for Smoking Marijuana

The United States has put forward sufficient, admissible, and uncontroverted evidence

demonstrating that the entire bulk of Defendant Property constituted "any equipment . . . primarily

intended or designed for use [with marijuana] . . . possession of which is unlawful." § 863(d).

Beginning with the pipes and smoking instruments depicted in Government Exhibits 32-104, both

Agent Martos and Officer Novicki opined that the objective design characteristics of the items

establish that they are designed for and primarily intended for use with marijuana. Pl.'s Mot. Exs.

110 ¶ 8-36; 112 ¶ 8-42. Moreover, posters of marijuana leaves, celebrities engaging in smoking

marijuana, items referencing 420 (a number associated with either April 20th or 4:20PM, both of

which are popular times to smoke marijuana), and a shop sign that stated "You cannot talk about

illegal stuff! If you do we will kick your ass out!" further demonstrate that the Defendant Property

objectively were designed for and primarily intended for use with marijuana. *Id*. Exs. 3, 4, 12, 19,

26, 27, 28.

A similar analysis applies to the roach clips. Officer Novicki stated that "the [roach clips] depicted in Government Exhibit 98 . . . are primarily intended for use in smoking marijuana." *Id*. Ex. 112 ¶ 39. Moreover, as described above, depictions of and references to marijuana use accompanied all the Defendant Property displayed in Phat Glass, Inc. *Id*. Exs. 3, 4, 12, 19, 26, 27, 28. Turning to the marijuana grinders depicted in Government Exhibits 16, 17, and 90, Agent Martos and Officer Novicki both opined that the objective characteristics establish that the items were designed for and primarily intended to grind marijuana for preparation of ingestion. *Id*. Exs. 110 ¶¶ 23, 32; 112 ¶ 36. They further opined that the manner in which Phat Glass, Inc. displayed the marijuana grinders demonstrated that they constitute drug paraphernalia. *Id*. Exs. 16-17; 110 ¶¶ 23, 34.

With respect to the nails and quartz bangers, both Agent Martos and Officer Novicki specify that the items depicted in Government Exhibits 50-60 objectively qualify as drug paraphernalia. *Id*. Exs. 110 ¶¶ 8, 28-30; 112 ¶¶ 16-17. They further state that the flip tops and concealment containers are primarily intended or designed for use with unlawful controlled substances. *Id*. Exs. 110 ¶ 32; 112 ¶ 34. Unsurprisingly, the flip tops include a miniature spoon, while the concealment containers store a metal chillum, both of which constitute per se drug paraphernalia. *Id*. Exs. 85, 88. It follows, then, that these items meet the definition of drug paraphernalia.

A few items in the Defendant Property conceivably allow for use outside the context of drug paraphernalia. Specifically, the scales, glass vials, detoxifiers, and synthetic urine kits depicted in Government Exhibits 34-104 all could be used for lawful purposes, however unlikely that may be. To determine whether the scales, glass vials, detoxifiers, and synthetic urine kits are legitimate or drug paraphernalia, the Court's inquiry focuses on the "actual use of [the property]

in the community." *Posters 'N' Things, LTD,* 511 U.S. at 519-20. Indeed, the Supreme Court explained that "while scales and razor blades as a general class may not be designed specifically for use with drugs, a subset of those items in a particular store may be 'primarily intended' for use with drugs by virtue of the circumstances of their display and sale." *Id.* at 521 n.11.

With this understanding, the Court concludes that the undisputed material facts demonstrate that the scales, glass vials, detoxifiers, and synthetic urine kits all objectively constitute drug paraphernalia. To begin, marijuana depictions and references, other drug paraphernalia, and drug related posters accompanied each of the items displayed for sale. *See* Novicki Decl. ¶¶ 1-42; Martos Decl. ¶¶ 1-37. The location and manner in which the items were displayed establishes that the "actual use of [the scales, glass vials, detoxifiers, and urine kits] in the community" is with controlled substances. *See Posters 'N' Things*, 511 U.S. at 519-20. Further, the uncontroverted evidence establishes that synthetic urine masks the presence of narcotics while detoxifiers prevent positive results on drug tests. Novicki Decl. ¶¶ 40-41; Martos Decl. ¶¶ 15, 30.

Finally, Fernandez's admissible evidence fails to create a triable issue on any of these ostensible dual-purpose items.[5] His affidavit lacks any statements, or citations to the record, that contradict the United States' evidence or that suggest any legitimate uses for these items. *See e.g., United States v. Assorted Drug Paraphernalia*, 90 F. Supp. 3d 1222, 1229 (D.N.M. 2015) (affidavit created genuine issue of material fact when it stated scales could be used for weighing jewelry, gunpowder, medicine, and spices).

---

[5] For instance, synthetic urine could be used for testing medical equipment. Scales could be used to weigh spices, gunpowder, and medicine. Glass vials could be used to store medication such as liquids, powders or capsules. Finally, detoxifiers could be used to begin a diet.

For these reasons, the Court concludes that Fernandez has failed to carry his burden of offering admissible evidence sufficient to create a genuine issue of material fact as to whether the Defendant Property constituted drug paraphernalia as defined under 21 U.S.C. §§ 863(d) and 881(a)(10).

**B.      "Authorized by Law" Exemption Is Not Applicable**

Section 863 exempts from forfeiture any drug paraphernalia possessed by "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items." 21 U.S.C. § 863(f)(1). Invoking this exemption, Fernandez asserts that his possession of a New Mexico Cannabis Card immunizes him from civil forfeiture. The Court disagrees.

Pursuant to the "Lynn and Erin Compassionate Use Act" ("CUA"), NMSA 1978 § 26-2B-1, the New Mexico Department of Health administers the New Mexico Medical Cannabis Program and issued Fernandez his card. In pertinent part, the CUA provides:

> Any property interest that is possessed, owned or used in connection with the medical use of cannabis, or acts incidental to such use, shall not be harmed, neglected, injured or destroyed while in the possession of state or local law enforcement officials. Any such property interest shall not be forfeited under any state or local law providing for the forfeiture of property except as provided in the Forfeiture Act. Cannabis, paraphernalia or other property seized from a qualified patient or primary caregiver in connection with the claimed medical use of cannabis shall be returned immediately upon the determination by a court or prosecutor that the qualified patient or primary caregiver is entitled to the protections of the provisions of the Lynn and Erin Compassionate Use Act, as may be evidenced by a failure to actively investigate the case, a decision not to prosecute, the dismissal of charges or acquittal.

NMSA 1978 § 26-2B-4(G). Fernandez argues that the § 863(f)(1) exemption applies because the CUA allows qualified patients like himself to personally possess cannabis and drug paraphernalia.

The United States attacks on three grounds. First, the United States argues the exemption only applies to criminal prosecutions, not in rem civil forfeiture proceedings. The United States

next insists that the CUA does not authorize Fernandez to possess the large quantities of drug paraphernalia that he maintained at Phat Glass, Inc. Lastly, the United States urges the Court to reject any reading of the CUA that would allow for Fernandez to sell drug paraphernalia. Because there is no dispute that Fernandez is a qualified patient under the CUA, the only issue for the Court to address is whether the exemption applies to the facts of this case as a matter of law.

### 1. 21 U.S.C. § 863(f)(1) Is Not Applicable to In Rem Civil Forfeitures.

The United States' argument that § 863(f)(1) does not apply to civil forfeitures flows from its interpretation of the text and nature of §§ 863 and 881. The United States maintains that the "authorized by law" exemption is found in 21 U.S.C. § 863, a federal criminal statute, and therefore applies only to *persons* in criminal proceedings. In contrast, a cause of action brought under 21 U.S.C. § 881, a federal civil forfeiture statute, applies only to property in rem. The United States further argues that § 863's only relevance to this case lies with the definition of drug paraphernalia set forth in § 863(e) and the exemption from the definition as provided in § 863(f)(2).

Section 863 makes it "unlawful for *any person* . . . to sell or offer for sale drug paraphernalia . . . [and] . . . [a]nyone *convicted* of an offense under subsection (a) of this section shall be imprisoned for not more than three years." 21 U.S.C. § 863(a)-(b) (emphasis added). In comparison, § 881 states "[t]he following [subject property] shall be subject to forfeiture to the United States and no property right shall exist in them . . . any drug paraphernalia (as defined in section 863 of this title)." 21 U.S.C. § 881(a)(10). Moreover, the exemption at issue states "this section shall not apply to . . . *any person* authorized by local, State, or Federal law to manufacture, possess, or distribute such items." 21 U.S.C. § 863(f)(1) (emphasis added). For its

part, section 863(f)(2) exempts "*any item* . . . traditionally intended for use with tobacco products." 21 U.S.C. § 863(f)(2) (emphasis added).

Applying the plain meaning of the text, the Court concludes that the United States' construction of the interplay between the statutes is accurate. Section 863(f)(1) exempts "any person" from prosecution, while § 863(f)(2) exempts "an item" from the definition of drug paraphernalia. This intentional choice of language leads the Court to conclude that Congress intended to shield from prosecution those persons who were "authorized by [law] to manufacture, possess, or distribute [drug paraphernalia]," but did *not* intend to also shield the drug paraphernalia itself from lawful forfeiture. That balance was within Congress's purview to strike. Moreover, § 881 governs civil forfeiture of property and not the prosecution of the possessor of such property. Consequently, Fernandez cannot obtain relief under § 863(f)(1) in a civil forfeiture action brought against drug paraphernalia in rem.

### 2. New Mexico Law Does Not Allow Qualified Patients to Sell Drug Paraphernalia.

As discussed above, § 863(f)(1) does not apply to in rem civil forfeitures. Although this apparently is an issue of first impression in the District of New Mexico, the Court concludes that there is a separate and alternative reason why the CUA does not bar this forfeiture: the CUA does not authorize medical cannabis users to *sell* drug paraphernalia.

Fernandez theorizes that the CUA endows a qualified patient with the authority to sell drug paraphernalia. The United States contends, however, that neither the text nor the spirit of the CUA stretches this far. To support its argument, the United States emphasizes that the CUA lacks a provision regulating or authorizing the sale of drug paraphernalia. The United States also contends New Mexico law criminalizes the sale of drug paraphernalia. Lastly, Fernandez

finishes by arguing that because he pays taxes and possesses a business license, he can lawfully sell drug paraphernalia.

Under the CUA, "any property interest that is possessed, owned or used *in connection with the medical use of cannabis* . . . shall not be forfeited under any state or local law providing for the forfeiture of property . . . ." N.M. Stat. Ann. § 26-2B-4(G) (emphasis added). Furthermore "[drug paraphernalia] seized from a qualified patient . . . *in connection with the claimed medical use of cannabis* shall be returned immediately . . . upon a court['s] [determination] that the qualified patient . . . is entitled to the protections of the [CUA] . . . ." *Id.* (emphasis added). A qualified patient, however, "[is] not relieve[d] . . . [from] criminal prosecution or civil penalties for activities not authorized in the [CUA]." § 26-2B-5. Furthermore, under New Mexico law "[i]t is unlawful for a person to deliver, possess with intent to deliver or manufacture drug paraphernalia with knowledge . . . that it will be used to . . . introduce into the human body a controlled substance . . . ." N.M. Stat. Ann. § 30-31-25.1.[6]

With this background, the Court is not persuaded by Fernandez's argument that the CUA allows qualified patients to sell drug paraphernalia. As the United States correctly points out, outside the context of a "licensed producer,"[7] the CUA is entirely silent on the sale of drug paraphernalia. *See* N.M. Stat. Ann. §§ 26-2B-4(F), 26-2B-5(C). This Court is reluctant to agree that the New Mexico Legislature somehow authorized the sale of drug paraphernalia by remaining silent about it. Moreover, even if the CUA granted a qualified patient the authority to sell drug paraphernalia, which it undoubtedly does not, the sale would have to be "in connection

---

[6] Of course, irrespective of New Mexico law on medical cannabis, the possession, possession with intent to distribute, and the distribution of marijuana all remain violations of federal criminal law. 21 U.S.C. §§ 841(a)(1) and 844.

[7] "Licensed producer" means any person or association of persons within New Mexico that the department determines to be qualified to produce, possess, distribute and dispense cannabis pursuant to the Lynn and Erin Compassionate Use Act and that is licensed by the department. N.M. Stat. Ann. § 26-2B-4(F). Claimant has not argued that he is a licensed producer of cannabis.

with the claimed medical use of cannabis." *See* § 26-2B-4(G). Fernandez cannot be heard to argue that because *he* is a qualified patient under the CUA, he can lawfully sell drug paraphernalia to the general public while a non-qualified patient would enjoy no such privilege. Fernandez's post hoc rationalization that many of his customers are also enrolled and qualified patients in the New Mexico Cannabis Program is not only inconsistent with the text of the CUA but also raises issues regarding his other *unenrolled* customers.

Additionally, Fernandez's knowledge that his customers use the items sold at Phat Glass, Inc. to introduce marijuana into their bodies subjects him to possible prosecution rather than immunity from forfeiture. *See* N.M. Stat. Ann. § 30-31-25.1 (making it unlawful to deliver or manufacture drug paraphernalia with knowledge it will be used to introduce controlled substances into the human body); *see also* N.M. Stat. Ann. § 26-2B-5 (providing that a qualified patient is not relieved from criminal prosecution for acts not authorized by the CUA). Lastly, the Court rejects Fernandez's belief that paying taxes and possessing a Las Cruces business license allows him to sell drug paraphernalia. As described above, New Mexico criminalizes the sale of drug paraphernalia. *See* N.M. Stat. Ann. § 30-31-25.1. It is enough to say that a city cannot authorize what the state prohibits.

### 3. New Mexico Law Does Not Allow Fernandez to Possess Large Quantities of Drug Paraphernalia.

Fernandez's final effort to avoid forfeiting all of the Defendant Property focuses on possession instead of distribution. Fernandez argues that the CUA does not limit the number of items constituting drug paraphernalia that a qualified patient may legally possess. The United States, however, counters that the CUA does not contemplate nor authorize qualified patients to possess large quantities of drug paraphernalia.

Turning to the relevant text, the Court notes the CUA's provision that "any property interest that is possessed, owned or used *in connection with the medical use of cannabis* . . . shall not be forfeited under any state or local law providing for the forfeiture of property . . . ." N.M. Stat. Ann. § 26-2B-4(G) (emphasis added). Further "[drug] paraphernalia . . . seized from a qualified patient . . . *in connection with the claimed medical use of cannabis* . . . shall be returned immediately upon the determination . . . that the qualified patient . . . is entitled to the protections of the [CUA] . . . ." *Id.* (emphasis added).

While the text clearly permits the possession of drug paraphernalia by qualified patients, Fernandez fails to address the underlying issue. The CUA only authorizes qualified patients to possess drug paraphernalia "in connection with the claimed medical use of cannabis." *Id.* It does not, however, authorize qualified patients to possess drug paraphernalia for commercial purposes. *Id.*; *see also* N.M. Stat. Ann. § 26-2B-5 (acts nots not authorized by the CUA do not relieve qualified patients from civil or criminal liability). Federal agents seized the Defendant Property while it was displayed for sale at Phat Glass, Inc. – a head shop – and not within Fernandez's residence. Furthermore, Fernandez neither argued nor introduced any evidence that the seized materials were the drug paraphernalia he used for his own ingestion of medical marijuana. Consequently, Fernandez's argument is without merit.

For these reasons, the Court concludes that Fernandez has failed to carry his burden of pointing to admissible evidence sufficient to create a genuine issue of material fact that supports a finding that the "authorized by law" exemption in § 863(f)(1) applies to this case. The Court further concludes that the United States is entitled to judgment as a matter of law on insofar as it relates to this exemption.

## C.     Tobacco Exemption Does Not Apply

The other statutory carve-out from the definition of drug paraphernalia is for items "traditionally used for tobacco products." 21 U.S.C. § 863(f)(2). This provision requires an "objective construction" and is "not based on the subjective intent of a particular [claimant]." *Posters 'N' Things, LTD*, 511 U.S. at 521.

Here, Fernandez has not devoted any meaningful argument to this issue and has not put forward any admissible evidence to support a finding that any of the Defendant Property is traditionally used for tobacco products. On the other hand, the United States' evidence includes an affidavit by Matthew C. Monte, owner of Monte's Fine Cigars. Pl.'s Mot. Ex. 113. In operation for over forty-two years, Monte's features one of the largest selections of tobacco pipes, pipe tobacco, and accessories in the Southwest. *Id.* ¶ 1. After explaining in great detail the intricacies of pipe tobacco, the typical materials used to construct pipes, and bowl sizes, Monte analyzed every item in the Defendant Property and opined that "Government Exhibits 32-104 are not designed for or traditionally used with tobacco products. It is not even [a] close [call]." *Id.* ¶ 14. He further elaborated "that [Government Exhibits 32-104] are not the types of items you would traditionally find in a legitimate tobacco shop . . . [and] are inconsistent with the design characteristics and shapes of pipes that are traditionally used for tobacco." *Id.* ¶¶ 14-16. Monte finished by explaining that the glass vials, roach clips, flip tops, scales, grinders, synthetic urine kits, and detoxifiers logically fall outside the tobacco exemption. *Id.* ¶¶ 18-22.

Fernandez's sole argument that the pipes and smoking instruments qualify for the tobacco exemption is a single conclusory statement that all items *can* used for smoking tobacco. Resp. 6. Not only does this argument fail as a matter of law – because it hypothesizes a *potential* use for these instruments – Fernandez does not even proffer admissible evidence to support that claim.

Consequently, there is no material factual dispute on this point and the tobacco exemption is inapplicable. *See Posters 'N' Things*, LTD, 511 U.S. at 519 (possible uses are irrelevant in the analysis). Whether this failure to mount a meaningful argument might be a product of mere oversight, or more likely the realization that tobacco is not "traditionally" smoked with a gas mask or any other items in the Defendant Property is not a question the Court must decide. It is enough for the Court to point out the absence of a triable issue as to whether the tobacco exemption could objectively apply.

For these reasons, the Court concludes that Fernandez has failed to carry his burden of pointing to evidence sufficient to create a genuine issue of material fact that supports a finding that the Defendant Property is traditionally used for tobacco products. The Court further concludes that, with regards to the tobacco exemption, the United States is entitled to judgment as a matter of law.

## VII. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the United States' "Motion for Summary Judgment" [ECF No. 29], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Property is hereby forfeited pursuant to 21 U.S.C. § 881(a)(10), with all right, title, and interest, including that claimed by Mr. Fernandez, vested in the United States.

**IT IS FURTHER ORDERED** that the United States shall submit a proposed form of judgment consistent with this decision.

**IT IS SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*